King, J.
In this case a petition was filed in the court of common pleas of this county, to enjoin tha defendant from the use of a trade-mark, consisting of the words “The New Burch” together with the figures “21” and “22” used upon plows, the former number indicating a right-hand plow,and the latter a left-hand plow.
It is alleged in the petition that the plaintiff was engaged in the manufacture of plows, at Crestline, Ohio, That in 1887, he adopted this name and these numbers,and marked them upon the plows of his production, and sold them through the country wherever he could find buyers. In 1897, the defendant, The Toledo Plow Company, began to use this name which plaintiff had so adopted, upon its products.
Some of these allegations are denied in the answer; and the answer alleges, substantially, this state of facts: that in September, 1883, the plaintiff alone, was engaged in the manufacture of plows at West Toledo; that in thet month three gentlemen here entered into a partnership with him buying one half-interest in the business — in the factory,the land upon which it was situated, the machinery, tools, patterns and patents, and everything owned by the plaintiff and used by him; that they paid to him for that, the sum of *484 $10,000; that also, a little later — in January, 1884 — thése parties organized a corporation, known as The Toledo Plow Company, and took stock therein, the plaintiff being a stockholder and an officer thereof. This new corporation purchased from the firm of which plaintiff was a member, all of its machinery, patterns, tools, patents, stock and real estate, the resolution to that effect being attached to the answer. That afterwards the plaintiff sold his shares of stock to private individuals, and that they were persons interested in the corporation and owners of stock therein, “That at the time the plaintiff sold his interest in said business as aforesaid, he entered into a verbal agreement with the persons purchasing his shares of the capital stock of said company, who then constituted all of the holders of the capital stock of said company, whereby the plaintiff undertook and agreed that he would not thereafter enter into the business of manufacturing plows. The defendant says that shortly thereafter, the plaintiff began and has since continued the manufacture of plows at Crestline, Ohio. The defendant says that the said plaintiff at the time of his manufacturing plows at West Toledo, named the plows so manufactured the “Burch Plow,’’ and thereafter the said partnership, and subsequently the said defendant corporation, continued the use of said name more or less in the manufacture of plows, with designated numbers therefor. That about the year 1887, the plaintiff procured another patent, as an improvement upon the Burch plow, previously manufactured by the plaintiff and the defendant, and thereupon called the same “The New Burch,’’ the right-hand plow being numbered 21, and the left-hand plow being numbered 22. The defendant says that the said The New Burch, numbered 22, differed only from the previous Burch plow manufactured by the defendant and numbered from 1J to 20, in the use of the device covered by the said new patent, and that in no other substantial respect was the *485 said New Burch different from, or a change in the plow previously manufactured.. The defendant says, that under the terms of the original agreement,'as shown by said Exhibit “A,” the said defendant had a shop-right to manufacture the said New Burch, and use the patented device acquired and used by the plaintiff as aforesaid. ” And defendant admits that prior to the time of the filing of the petition of plaintiff, it had manufactured and sold plows and marked the same “The New Burch,” numbered “21,” as alleged.
“Exhibit A,” referred to above, is as follows:
“Toledo, O., Sept. 22d, 1883.
“F. D. Suydam,John C. Clarke & Horace M. Wright.
“Gentlemen: — I will sell you one-half of my plow factory, including the land on which it is situated, machinery, tools, patterns and patents and everything pertaining and relating to the manufacture of plows, for the sum of ten thousand dollars. Then form a partnership with you in which I will represent one-half, and you the balance. Then I will sell the firm my manufactured plows at 50 per cent, ■discount off my list and stock, raw and in process, at market value. I also agree to include in the sale of my patent-a shop-right of any other patent I may be able to secure.
“Sept. 22, 1883, N. Bueoh.”
“N. Bueoh:
“We accept the above offer.
“F. D. Suydam, By John C. Clarke.
“John C. Clabke.
“H. M. Weight,”'.
Exhibit “B.” is a resolution,by the board of directors; but it would add nothing to the claim made by the defendant. The claim made here by the defendant is, that when the plaintiff sold his business to the firm — which was afterwards acquired by the corporation — he not only sold all his property on hand, or an interest therein, but he agreed at the time that the company or firm should have a shop-right to use any new inventions which he might make in the plows, in their manufactory.
*486 Second: That when he came to sell his stock to private^ individuals, he agreed with them — severally or jointly, it is not alleged which — that he would not thereafter enter into the business of manufacturing of plows. That is an allegation in the answer; and, clearly, it would have the interpretation that he was not ever to enter into the business of manufacturing plows anywhere. Now it is said that notwithstanding that would be a contract perhaps unreasonably in restraint of trade, and which a court of equity would not-enforce, or a court of law either if an action were brought, by the corporation to enforce it — yet, when Burch shall come into a court of equity and ask to have the corporation, enjoined, he does not come with clean hands, but is in such situation that the court will leave him where it finds him;, in other words, that it will not enjoin the defendant from the use of this trade-mark, because while he has entered into a contract which perhaps is void — because not in writing- —or into a contract which perhaps could not be enforced because unreasonable, still a court of equity will not give-him any relief. I have not time to go over the argument in all its details, but that is the substance of it.
From this answer it appears that Mr. Burch sold a half-interest in his running business in Toledo in 1883, and1 thereafter, as a member of that firm, he conveyed the whole-of the business to a corporation in 1884. That the agreement by Burch with his partners was to the effect that the firm should have a right to use in the shop any patent which, he might thereafter secure for improvements upon plows.
The allegation in the answer, that he made an agreement with these stockholders, that he would not enter into the-business of manufacturing plows, is of an exceedingly shady character, It is doubtful if there is any privity of contract between the stockholders severally and the corporation, or whether the corporation could take advantage of that contract; but we do not rest the decision upon that ground. *487 Conceding that they might, and conceding that if this contract had been in writing, it would'have been one that the Plow Company could have enforced against Burch, yet the agreement was, that Burch should not manufacture plows; the agreement was, that the corporation should have the use in its shops of any patents 'that Burch might thereafter obtain. Burch has violated one of these agreements by -going into the business of the manufacturing of plows. But he claims that in entering into the business of manufacture of plows he did not manufacture the plow that defendant was manufacturing; on the contrary, he secured a patent upon an improvement of that plow, and he manufactured the improved plow, and that was not the plow that the defendant itself was manufacturing. He made no agreement with defendant that he should not thereafter invent, or that he should not have the property in his invention. He did not convey to the defendant a right to his’future inventions, exclusively — but conveyed only the right to the defendant to use his inventions in their shop. They would thereby acquire no right to prevent him from using them if the contract was valid; nor could he prevent them, if they had the right to use them, from adopting any name or device they saw fit.
In 1887, having secured this new intention, he commenced the manufacture of plows — possibly in violation of the agreement that he would not do só, but he manufactured the improved plow, upon which he had obtained a new patent and upon which he placed his new trade-mark. This action is to enjoin the defendant from the use of that trademark, and we can discover no equitable reason why Burch has not a full right to apply to a court of equity to enjoin them from the use of this trade-mark. It is not an answer to say that he had agreed not to manufacture plows; he did not agree not to improve his plows by new inventions, and he had not agreed that the property in those inventions *488 should pass to and be vested in the Plow Company. They did not acquire by this contract concerning this invention, a right to use Mr. Burch’s trade-mark. We think the answer sets up a clear case of infringement of this trade-mark, and therefore the injunction will be made perpetual.
Ahnon Hall, for Plaintiff,
E. W. Tolerton, for Defendant.